James K. Wilkens
Bliss, Wilkens & Clayton
500 L Street, Suite 200
Anchorage, AK  99501
(907) 276-2999
(907) 276-2956 (fax)
jkw@bwclawyers.com

Lawyers for State Farm

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL BATEMAN, as personal representative of the Estate of Mildred McGalliard; and STATE OF ALASKA, <br><br> Defendants. | Case No. 3:06-cv-00152-TMB <br><br> **STATE FARM'S MOTION FOR SUMMARY JUDGMENT** |

State Farm Fire and Casualty Company ("State Farm") filed this federal declaratory judgment action after the State of Alaska, Department of Environmental Conservation ("ADEC"), filed a state court lawsuit against Michael Bateman, as personal representative of the Estate of Mildred McGalliard ("Estate of McGalliard"), for certain pollution liability occurring at 3603 Wyoming Drive in Anchorage. (Case No. 3AN-06-6485, Third Judicial District).[1]  The

---

[1] ADEC's complaint in the underlying state court lawsuit (attached to State Farm's complaint in this federal declaratory

primary question in this federal action is whether such pollution liability at 3603 Wyoming is covered under the State Farm rental dwelling insurance for the property next door at 3601 Wyoming.[2]

I.  **STATEMENT OF UNCONTESTED FACTS**

Since late 1983, Joseph and Mildred ("Mickey") McGalliard (both now deceased) owned the premises located at 3601 Wyoming Drive (Lot 6, Block 1 Conroy-Rushton Subdivision) in Anchorage Alaska, which they used as rental property.  Although historical proof of insurance coverage is doubtful, State Farm admits it provided certain rental dwelling insurance coverage for this property at 3601 Wyoming from 1990 - 1994 as follows:[3]

| Period | Type of Coverage (Form) |
|---|---|
| 2/8/90 - 2/8/91 | Rental Dwelling (FP 8103.3) |
| 2/8/91 - 2/8/92 | Rental Dwelling (FP 8103.3) |
| 2/8/92 - 2/8/93 | Rental Dwelling (FP 8103.3) |
| 2/8/93 - 2/8/94 | Rental Dwelling (FP 8103.3) |
| 2/8/94 - 11/4/94 | Rental Dwelling (FP 8103.3) |

(See attached Affidavit of Megan Reed.)

---

judgment action) is incorporated by reference in this motion as "ADEC Complaint."

[2] A copy of a plat map is attached and incorporated as Exhibit A.  A fence physically separates the property at 3603 Wyoming from 3601 Wyoming and from the common alleyway.  See also BGES 2005 Final Report (attachments omitted), at pp. 1-2, attached and incorporated as Exhibit B.

[3] State Farm is aware of documents which may suggest State Farm provided other apartment or rental dwelling insurance coverage at 3601 Wyoming during other time periods.  However, because of the length of time which has passed since these events, State Farm simply does not keep records that far back and cannot confirm whether this insurance was actually effective, or if so, verify the specific terms, conditions and forms involved in such other coverage.  See Reed Aff., at ¶¶ 4-5.

Since the 1960s, the McGalliards also owned the property at 3603 Wyoming Drive (Lot 5, Block 1, Conroy-Rushton Subdivision), which they used as their residence.[4] ADEC Complaint, at ¶ 9. From 1973 to the late 1980s, the McGalliards, under the business name M&M Enterprises ("M&M") used the property at 3603 Wyoming for scrap metal salvage and battery recycling and storage. (See ADEC Demand Letter dated April 14, 2005, at pp. 1-2, attached and incorporated as Exhibit C; Dames & Moore 1991 Report (attachments omitted), at pp. 1-2, attached and incorporated as Exhibit D; HartCrowser 2002 Report (attachments omitted), at p. 2, attached and incorporated as Exhibit E.) Batteries were stored along the north fence to a height of approximately 8 feet, and in an area extending from the fence to about 10 feet out from the south of the fence. (See Ex. B, BGES Report, at pp. 1-2.) During the time of the battery recycling operation, M&M dumped sulfuric acid on the ground (into a leach field) or down the drain at 3603 Wyoming. (See Ex. E, HartCrowser Report, at p. 3; Ex. C, ADEC Demand Letter, at p. 2; Ex. B, BGES Report, at p. 1.) Environmental site assessments found heavy metals, including lead, cadmium and mercury, and other hydropetroleum byproducts in the soil and groundwater. ADEC Complaint, at ¶¶ 16, 18; Ex. E, HartCrowser Report, at p. 7. These hazardous substances migrated into the ground and onto the adjoining alleyway and properties. Ex. C, ADEC Demand Letter, at

---

[4] Over the years, the McGalliards obtained liability insurance on their property at 3603 Wyoming from various sources, including Alaska Pacific, CIGNA and Vesta (but not from State Farm). See Ex. C, ADEC letter, at p. 4; Reed Aff., at ¶ 6.

p. 2; ADEC Complaint, at ¶ 18. The Environmental Protection Agency ("EPA") listed the property at 3603 Wyoming as a hazardous waste site.[5]  Ex. E, HartCrowser Report, at p. 1; Ex. D, Dames & Moore Report.  Recently, ADEC remediated the polluted property at 3603 Wyoming, and incurred substantial costs in doing so.  Ex. C, ADEC Demand Letter; ADEC Complaint.

On or about March 28, 2006, ADEC filed a lawsuit against the Estate of McGalliard (in Case No. 3AN-06-6485 Civil), alleging liability for these pollution remediation costs and expenses, as well as future costs and expenses, pursuant to AS 46.03.822.[6] State Farm agreed to defend the Estate of McGalliard under a reservation of rights as to the allegations in ADEC's complaint,[7] and then filed the subject federal declaratory judgment action seeking an adjudication of the parties' rights and duties under the State Farm policy.

---

[5] Apparently, there is some confusion in the ADEC records. Although the Juneau ADEC office advised that 3603 Wyoming was listed on the State's discovery list in 1980, and was evaluated and inspected in 1984, 1988 and 1990, later investigation revealed the initial reports may not have been relating to 3603 Wyoming, but to a separate facility M&M operated at 620 East International Airport Road in Anchorage.  See Ex. D, Dames & Moore, at p. 2.

[6] Under this statute, the owner or operator of a "facility" from which there is a release of a hazardous substance may be held strictly liable for damages and cleanup expenses.  AS 46.03.822(a)(2).  See Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc., 21 P.3d 344 (Alaska 2001).  An "operator" of a facility is someone who exercises "actual control" over the facility, including a person who is actively involved in running the facility on a day-to-day basis.  See Parks Hiway Enterprises v. CEM Leasing, Inc., 995 P.2d 657 (Alaska 2000).

This matter is presently before the Court on State Farm's Rule 56 summary judgment motion, seeking an adjudication State Farm owes no duty to defend or indemnify the Estate of McGalliard as to ADEC allegations. This motion is based on the arguments: (1) the State Farm policy does not cover risks or liability arising from the pollution activities occurring at 3603 Wyoming, and (2) for those time periods where State Farm can confirm the existence of coverage, State Farm's policies contain an "absolute" pollution exclusion.[8]

## II.  APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

Under Civil Rule 56(c), a party is entitled to summary judgment where it establishes there is no genuine issue as to any material fact, and the party is entitled to judgment as a matter of law. See <u>Suzuki Motor Corp. v. Consumers Union of United States, Inc.</u>, 292 F.3d 1192, 1199 (9th Cir. 2002); <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000). The moving party bears the initial burden of establishing the absence of any genuine

---

[7] A copy of State Farm's reservation of rights letter is attached to its federal declaratory judgment complaint.

[8] Because these arguments would preclude any coverage, State Farm's motion is presently limited to such positions. State Farm reserves its right (should its motion not be granted) to pursue any and all other available defenses to coverage in this declaratory judgment action, including (1) application of the intentional acts exclusion, (2) question of "named insureds" under the policy, (3) whether coverage is precluded or limited under the "other property of insured" exclusion, (4) whether the claim has violated the policy's condition for timeliness of bringing the claim, (5) whether and to what extent co-insurance may apply, and (6) whether any property damage from pollution liability actually occurred during the relevant State Farm policy periods.

issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). Once the moving party has met its initial burden, the non-moving party is required to go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). Where the non-moving party will bear the burden of proof at trial as to an element essential to its case, a failure to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element entitles the moving party to summary judgment. See <u>Celotex</u>, <u>supra</u>. The non-moving party must show there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, <u>supra</u>. If the factual context makes the non-moving party's claim <u>implausible</u>, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). Mere disagreement about a material issue of fact is not enough to preclude summary judgment. <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466 (9th Cir. 1987).

**B.   Insurance Contract Interpretation**

A court sitting in diversity jurisdiction must apply the substantive law of the forum state. Van Dusen v. Barrack, 376 U.S. 612, 628, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). Under Alaska law, an insurer's obligation is generally determined by the terms of the policy it issued. State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042 (Alaska 1996); State v. Lloyds, 755 P.2d 396, 400 (Alaska 1988). See generally 6B John A. Appleman, Insurance Law & Practice § 4254 at 24-25 (Buckley ed. 1979). The court looks to four factors when interpreting contracts: (1) the language of the disputed policy provision; (2) the language of other provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions. Dugan v. Atlantic Cas. Co., 113 P.3d 652, 654 (Alaska 2005). Where policy provisions are clear in their intent and in meaning, they will be enforced, and the court will not artificially create an ambiguity where none otherwise exists. Bongen, supra at 1045; Allstate Ins. Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir. 1985). Since most insureds develop an expectation that every loss will be covered, the reasonable expectation doctrine must be limited by something more than fervent hope usually engendered by loss. Bongen, supra, at 1047. In situations where reasonable interpretation favors the insurance company, and any other interpretation would be strained and tenuous, no compulsion exists to torture or twist the language of

the insurance contract.  <u>Dugan</u>, <u>supra</u> at 655, citing <u>Ness v. Nat'l Indem. of Nebraska</u>, 247 F. Supp. 944, 947 (D. Alaska 1965).

III. **ANALYSIS - STATE FARM PROVIDES NO COVERAGE FOR THE POLLUTION LIABILITIES ASSERTED BY ADEC**

    A. <u>Coverage is Provided for Liability Risks for the Property at 3601 Wyoming, but Not for Pollution Liability Risks at 3603 Wyoming</u>

        1. <u>Policy language</u>

The subject State Farm policies[9] provide certain liability coverage for property damage which "arises from the ownership, maintenance or use of the **insured premises**."  <u>See</u> Section II - Liability Coverages, Coverage L - Business Liability.  "Insured premises" is defined as the residence premises at 3601 Wyoming, and the "ways immediately adjoining on land."  <u>See</u> Definitions, ¶ 3.  Conversely, property damage "arising out of premises, other than the **insured premises**," is expressly excluded from coverage.  <u>See</u> Section II - Exclusions, ¶ 1(e).

        2. **"Insured premises"**

Here, the pollution resulted from M&M's activities at and use of the property at 3603 Wyoming, not the rental property at 3601 Wyoming.  Accordingly, on its face, there is no coverage for this liability since property damage did not arise from the

---

[9] State Farm provided insurance coverage for the property at 3601 Wyoming during the years 1990 - 1994 on Form FP 8103.3.  <u>See</u> Reed Aff., at ¶ 5.  According to a prior premium notice issued to Joseph McGalliard (<u>see</u> Ex. 4 to Reed Aff.), coverage may have been written during previous time periods on a Form FP 8103.2 policy.  (A copy of the FP 8103.2 policy is attached and incorporated as Exhibit F; a copy of the FP 8103.3 policy is attached as Ex. 1 to Reed Aff.)  The pertinent language of these two policies (discussed in this section of the brief) is identical.

ownership, maintenance or use of the property at 3601 Wyoming. Rather, the property damage arose from use of the adjacent property at 3603 Wyoming, which are "premises other than the insured premises."

ADEC agrees with this general principle, but then attempts to "shoe horn" coverage though the phrase "ways immediately adjoining on land." <u>See</u> Ex. C, ADEC Demand Letter. Apparently, it is ADEC's position that M&M utilized the common alleyway behind all of the properties on this block, and the common alleyway would constitute "ways immediately adjoining on land," thus triggering coverage for the rental policy at 3601 Wyoming.[10]

The Alaska court dealt with a similar issue in <u>Jones v. Horace Mann Ins. Co.</u>, 937 P.2d 1360 (Alaska 1997). <u>Jones</u> involved a personal injury arising from a snow machine accident, occurring on a property adjacent and .4 miles from the insured premises. The court concluded that the phrase "ways immediately adjoining" is somewhat imprecise, but it is not so ambiguous as to define reasonable construction in the context of a particular case. <u>Jones</u>, <u>supra</u> at 1364. Notably, the court cited <u>U.S. Fire Ins. Co. v. Schnackenberg</u>, 88 Ill. 2d 1, 57 Ill. Dec. 840, 429 N.E.2d 1203

---

[10] Other than its mere allegation, ADEC provides no evidence to substantiate there were any polluting activities in the alleyway behind 3603 Wyoming. Rather, the evidence shows the polluting activities all occurred within the fenced boundaries of 3603 Wyoming, and that the resulting pollution migrated onto the adjoining alleyway and property. However, for purposes of this summary judgment motion, State Farm will assume for the sake of argument that M&M Enterprises utilized the back alleyway to access their property at 3603 Wyoming.

(1981). In Schnackenberg, the question was whether a claim for personal injuries by a person struck on a bicycle riding on "Clark Street" was covered under a homeowner's policy covering a property which fronted on "Clark Street." The bicycle accident occurred approximately two and a half blocks from the insured property, but on Clark Street. The court ruled that the phrase "ways immediately adjoining" the insured property was to be interpreted in the most restrictive sense. Accordingly, although the property fronted on Clark Street, the court ruled that <u>the injury must have occurred on that part of Clark Street which "abuts and touches" the insured premises</u>. Schnackenberg, 429 N.E. 2d at 1216 (emphasis added). See United States v. Great Am. Indem. Co. of New York, 214 F.2d 17 (9th Cir. 1954); Long v. London & Lancashire Indem. Co. of Am., 119 F.2d 629 (6th Cir. 1941); Travelers Indem. Co. v. Bohn, 460 S.W.2d 642 (Mo. 1970).

Here, even assuming M&M used the common alleyway for purposes of accessing their property at 3603 Wyoming where the polluting activities occurred, this fact, by itself, is insufficient to trigger coverage under the State Farm policy covering the property at 3601 Wyoming. None of the polluting activities occurred on the portion of the alleyway directly behind 3601 Wyoming which directly abuts and touches the 3601 Wyoming property. Rather, the alleged polluting activities occurred in the alleyway which directly abuts and touches the property at 3603 Wyoming. Thus, since the damage did not occur on that part of the alleyway which "abuts and touches" the insured premises, the polluting activities did not

occur within the restrictive meaning of the phrase "ways immediately adjoining" 3601 Wyoming.[11]  For this reason alone, the Court should rule State Farm's policy provides no coverage at all for ADEC's allegation of pollution arising at 3603 Wyoming.

### 3. **"Arise from"**

Even if property damage is found to have occurred on the "ways immediately adjoining" the property at 3601 Wyoming, the property damage must "<u>arise from</u>" the ownership, maintenance or use of such insured premises.  Similarly, property damage "arising out of" premises other than the insured premises is expressly excluded from coverage.

Generally speaking, the phrase "arising out of" within policy language is considered to mean "flowing from" or "having its origin in," thus "indicating that there needs to be a causal connection between the insured premises and the resulting damage."  <u>See American Commerce Ins. Co. v. Porto</u>, 811 A.2d 1185, 1194 (R.I. 2002), citing 7 <u>Couch on Insurance 3d</u> § 101:54 (1997).  An insurance company may properly limit its liability for condition of the premises to the property insured for which a premium has been paid; it would be unreasonable to allow an insured to expand that coverage to additional land and structures which are unknown and

---

[11] Any other interpretation would be nonsensical.  The actual boundary line of 3601 Wyoming abuts and touches the property at 3603 Wyoming, yet there can be no legitimate argument that State Farm's policy would cover the property at 3603 Wyoming directly.  To apply ADEC's argument, the fact there is a common alleyway behind the properties on the entire block would be to read the policy to expand coverage to an area which does not directly touch and abut the insured property.

not contemplated by the company in writing the coverage. <u>Lititz Mut. Ins. Co. v. Branch</u>, 561 S.W.2d 371, 374 (Mo. App. 1977). The exclusion for damages arising out of other premises logically protects the insurer from liability for unsafe conditions on those specified premises which could be separately insured. <u>See</u> <u>Hanson v. Gen. Accident Fire & Life Ins. Corp., Ltd.</u>, 450 So. 2d 1260, 1262 (Fla. 1984).

Although the Alaska Supreme Court has not dealt squarely with this precise policy language in other circumstances, the court has required a causal relationship between the use of the premises and the resulting injury or damage. For example, while reading the territorial reach of "premises operations" coverage broadly, the court still requires some causal connection to the risks insured. <u>See</u> <u>State v. State Farm Fire & Cas. Co.</u>, 939 P.2d 788, 793 (Alaska 1997); <u>State v. Lloyds</u>, 755 P.2d 396 (Alaska 1988); <u>Hale v. Fireman's Fund Ins. Co.</u>, 731 P.2d 577 (Alaska 1987). Similarly, in cases involving automobile liability coverage, the court has stated the "mere situs" of the injury is not dispositive of coverage, and requires some causal connection between the location of the accident/injury and the "use" of the insured vehicle. <u>See</u> <u>Shaw v. State Farm Mut. Auto. Ins. Co.</u>, 19 P.3d 588 (Alaska 2001); <u>Criterion Ins. Co. v. Velthouse</u>, 751 P.2d 1 (Alaska 1986). Finally, in a case involving the rape of a patient on premises owned by a doctor, following an appointment with the doctor, the court ruled the physical setting alone is insufficient to determine coverage and the language "arise out of" requires some causal

connection between the occurrence and the location. <u>D.D. v. Ins. Co. of North America</u>, 905 P.2d 1365 (Alaska 1995).

Here, the property damage at the rental premises at 3601 Wyoming did not arise from the ownership, maintenance or use of such rental property. Rather, the property damage occurred as the result of M&M's activities at and use of the property next door at 3603 Wyoming. Under the express terms of the State Farm policy, such pollution liability is not covered under State Farm's rental policy for the property at 3601 Wyoming. Such pollution liability should be covered, if at all, under the separate insurance policies obtained by the McGalliards for their property at 3603 Wyoming.

### 4. Summary

In summary, the State Farm policies provide coverage for liability risks at the property at 3601 Wyoming, but not for the pollution liability at 3603 Wyoming. The "territorial" reach of the State Farm policy may include the alleyway which directly abuts and touches the property at 3601 Wyoming, but does not extend to the alleyway which abuts and touches 3603 Wyoming. Furthermore, any property damage at 3601 Wyoming does not "arise from" the use of the property at 3601 Wyoming; it "arises from" the use of the property at 3603 Wyoming. For these reasons, the Court should rule State Farm's policy does not apply to the allegations for pollution liability contained in ADEC's complaint against the Estate of McGalliard.

**B. State Farm's "Absolute" Pollution Exclusion (Form FP-8103.3) Precludes Any Coverage for ADEC's Claims**

State Farm's insurance policy (Form FP 8103.3)[12] includes an "absolute" pollution exclusion which reads:

> **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants:
>
> (1) at or from premises owned, rented or occupied by the **named insured**;
>
> (2) at or from any site or location used by or for the **named insured** or others for the handling, storage disposal, processing or treatment of waste;
>
> (3) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **named insured** or any person or organization for whom the **named insured** may be legally responsible; or
>
> (4) at or from any site or location on which the **named insured**, employee or any other contractor or subcontractor working directly or indirectly on behalf of the **named insured** is performing operations:
>
>  (a) if the pollutants are brought on or to the site or location in connection with such operations; or
>
>  (b) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> Subparagraphs (1) and (4)(a) of this exclusion do not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes which result from a hostile fire or poisoning or asphyxiation due to escape of fumes from a furnace or flue because of a malfunction of the furnace or flue.

---

[12] For all of those time periods for which State Farm has confirmed it wrote insurance for the property at 3601 Wyoming, coverage was written under Rental Dwelling Form FP 8103.3. <u>See</u> Reed Aff., at ¶ 3.

> In addition, Coverage L and Coverage M do not apply to loss, cost or expense arising out of any governmental direction or request that the **named insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants:
>
> As used in this exclusion:
>
> "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be,
>
> "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste,
>
> "waste" includes materials to be recycled, reconditioned or reclaimed.

The Alaska Supreme Court has not yet addressed language of an absolute pollution exclusion such as contained in State Farm's form. However, other courts have interpreted this provision, holding that the absolute pollution exclusion unambiguously excludes all pollution liability. See <u>Quadrant Corp. v. American States Ins. Co.</u>, 110 P.3d 733, 737-38 (Wash. 2005); <u>Cincinnati Ins. Co. v. Becker Warehouse, Inc.</u>, 262 Neb. 746, 635 N.W.2d 112, 118 (2001); <u>Kim v. State Farm Fire and Cas. Co.</u>, 312 Ill. App. 3d 770, 728 N.E.2d 530 (2000); <u>Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Co.</u>, 711 So. 2d 1135, 1137 n.2 (Fla. 1998). <u>See generally</u> <u>Couch on Insurance</u>, <u>supra</u> at §§ 127:14-15.

Based on the above legal authorities, the Alaska court would enforce the absolute pollution exclusion. Accordingly, the absolute pollution exclusion (in Form FP 8103.3) bars any coverage for the polluting activities, regardless of where the pollution occurred.

## IV.  <u>CONCLUSION</u>

State Farm's insurance policies covered certain liability risks at 3601 Wyoming, not 3603 Wyoming, where the pollution occurred.  Further, the "absolute" pollution provision in Form FP 8103.3 excluded such liability.  Since there is no coverage for the pollution liability asserted by ADEC against the Estate of McGalliard, State Farm has no duty to defend or indemnify the Estate of McGalliard for such claims.  For these reasons, State Farm respectfully requests the Court to grant its motion for summary judgment and to enter a declaratory judgment to this effect.

DATED at Anchorage, Alaska, this 19th day of September, 2006.

BLISS, WILKENS & CLAYTON
Lawyers for State Farm

By: s/James K. Wilkens
    500 L Street, Suite 200
    Anchorage, AK  99501
    Phone:   (907) 276-2999
    Fax:     (907) 276-2956
    E-mail:  jkw@bwclawyers.com
    ABA No.: 8408071

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2006, a copy of the foregoing document was served by mail on:

Michael Bateman
3004 Barbara Drive
Anchorage, AK  99517

Breck C. Tostevin
Assistant Attorney General
Environmental Section
1031 W. 4th Ave., Suite 200
Anchorage, AK  99501

s/James K. Wilkens

N:\JAW\957-271\PLDNGS\SJ.MOTION.DOC