property. The Estate agrees to sell the 3603 Wyoming Drive property within a commercially reasonable period of time for the property's fair market value given its existing condition. The Estate agrees to place the net proceeds of the sale (sales price less closing costs and brokerage fees) into an interest bearing escrow account pending resolution of the Civil Action and the claims assigned under Article II(A)(1) of this Agreement. The State agrees to withdraw its cost recovery lien on the 3603 Wyoming Drive property as part of such a sale with the State's lien to continue to apply to the net proceeds of the sale.

(3) <u>Right of Entry to Perform Remediation</u>: The Estate agrees that they will provide entry to the 3603 Wyoming Drive property during the hours of 8 a.m. to 6 p.m. and after no less than seventy-two hours notice, to DEC and its agents to enter in, on, upon, over and across any portion of the 3603 Wyoming Drive property to operate, maintain, alter, repair, and remove existing devices for the monitoring, containment, and treatment of contamination in soil, air and water, investigate and take samples, and, upon agreement as to the scope of work, excavate and remove waste, pollutants, hazardous substances, contaminated soils; contaminated waste, close and abandon monitoring wells, and such other conduce or activities as which may be agreed upon. Nothing in this Settlement Agreement shall be construed to require the State of Alaska to clean up, remediate, or restore the Wyoming Drive Contamination.

(4) Upon the effective date of this Settlement Agreement, the Estate and Michael A. Bateman release, discharge and covenant not to sue the State of Alaska, with respect to any and all claims, demands, actions, causes of action, lawsuits, and liabilities, of any kind and nature, (including, without limitation, all civil and administrative claims under federal or state statutes and implementing regulations, or common law for compensatory damages, or equitable

or remedial relief, e.g. loss of use, restoration costs, remediation and response costs, consultant fees, attorney's fees and costs, property damage, natural resource damages or economic loss) that arise from, relate to, or are based on, or could in the future arise from, relate to, or be based on the Wyoming Drive Contamination.

### III. ACKNOWLEDGMENT OF SCOPE OF RELEASE AND COVENANT NOT TO SUE

A. Each Party acknowledges that the Party is familiar with the decisions of the Alaska Supreme Court in the cases of *Young v. State of Alaska*, 455 P.2d 899 (Alaska 1969), *Alaska Airlines v. Sweat*, 568 P.2d 916 (Alaska 1977), and *Witt v. Watkins*, 579 P.2d 1065 (Alaska 1978), or has had the benefit of advice of an attorney concerning the meaning and import of these decisions, and it is still that Party's true intent and desire to release to the full extent set forth in Article I or II.

B. Each Party intends and agrees that the covenant not to sue shall have the same scope as the release as described in Paragraph A of this Article except as follows:

(1) If any person or entity not a party to this Settlement Agreement ("Third Party") asserts a claim relating to or arising directly from the Wyoming Drive Contamination in any present or future litigation against any of the released Parties, no releasing Party shall assert a right of contribution or indemnity against the released Party. However, notwithstanding any other provision of this Settlement Agreement, the sued Parties may assert any claim or defense against each other or implead any other released Party necessary as a matter of law to obtain an allocation of liability among the Parties in a case under this paragraph. Any such actions shall be solely for the purpose of allocating liability, if any. The Releasing Parties shall not enforce any judgments against each other in such cases.

Partial Settlement Agreement and Assignment of Insurance Rights        Page 7 of 14

Appendix A

(2) A Party may sue another Party to enforce the terms of the Settlement Agreement;.

## III. ADDITIONAL TERMS

A. <u>Permanent And Binding Resolution</u>: This Settlement Agreement is a permanent and binding accord and resolution of the rights and obligations of the Parties with respect to all matters that are the subject of this Settlement Agreement or the Releases herein.

B. <u>No Admission</u>: By entering into this Settlement Agreement, the Parties do not intend to make, nor shall they be deemed to have made, any admission of any kind. The Parties agree that they are entering into this Settlement Agreement solely as a business decision for the purposes of settling certain disputes between them and to avoid the cost of further litigation with respect to these disputes. This Settlement Agreement is the product of informed negotiations and compromises of previously stated legal positions. Nothing contained in this Settlement Agreement shall be construed as an admission by any Party as to the merit or lack of merit of any particular theory relating to the payment of claims arising from or relating to the Wyoming Drive Contamination. Statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other persons or entities not party to this Settlement Agreement. With respect to all such matters or persons, the Parties hereby reserve all previously held positions and all other rights and privileges.

C. <u>Use of Agreement</u>: The Parties agree that this Settlement Agreement and Release and any acts in the performance of this Settlement Agreement and Release are not intended to be, nor shall they in fact be, used in any case or other proceeding for any purpose, including, but not limited to, efforts to prove either the acceptance by any Party hereto of any particular theory of

coverage or as evidence of any obligation that any Party hereto has or may have to anyone. Provided, however, that nothing contained in this section shall be interpreted to restrict the right of any Party (a) to bring a claim or to introduce evidence predicated on a breach of this Settlement Agreement, (b) to supply a copy of any Release attached hereto or (c) to provide proof as to the fact of settlement and release provided herein if necessary to respond to a suit or claim.

  D. <u>Protection Afforded</u>: This Settlement Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and any similar state law provision.

  E. <u>Entire Agreement</u>: This Settlement Agreement constitutes the entire agreement between the Parties regarding the Wyoming Drive Contamination. Except as explicitly set forth in this Partial Settlement Agreement and Assignment of Insurance Rights, there are no representations, warranties, or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Settlement Agreement or the Releases or any of their conditions or terms. All prior negotiations, oral or written, are merged in this Partial Settlement Agreement.

  F. <u>No Assignment</u>: The Estate warrant that it has not, as of the effective date of this Settlement Agreement, assigned, conveyed, or otherwise transferred any claims, demands, causes of action, rights, or obligations related in any way to the Wyoming Drive Contamination, or to the claims, losses, and expenses released herein.

  G. <u>Other Assurances</u>: Each Party hereto shall provide such further and other written assurances reasonably necessary to effectuate the terms and intent hereof. In the event that either Party seeks a Court Order determining that the settlement was effective and/or in good faith, the

Parties, to the fullest extent reasonably possible, shall cooperate and assist each other in obtaining said good faith settlement determination. In the event any claim or action is brought against the State of Alaska by any person with respect to liabilities or obligations released hereunder, the Estate agree that they will not take any position that is inconsistent with the position of the State of Alaska that no such claim will now lie against the State of Alaska.

    H.    <u>Authorship</u>: The Parties agree that this Settlement Agreement and the Release reflect the joint drafting efforts of all Parties. In the event any dispute, disagreement or controversy arises regarding this Agreement, the Parties shall be considered joint authors and no provision shall be interpreted against any Party because of authorship. Each Party also agrees that it is fully informed as to the meaning and intent of this Settlement Agreement and the Release and has been advised by independent counsel of its choosing in that regard.

    I.    <u>Execution</u>: This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

    J.    <u>Amendment</u>: This Settlement Agreement may not be amended or modified except by a written instrument signed by the duly authorized representatives of all of the Parties.

    L.    <u>Headings</u>: The headings of sections are designed to facilitate ready reference to subject matter and shall be disregarded when resolving any dispute concerning the meaning or interpretation of any language contained in this Settlement Agreement.

    M.    <u>Notices</u>: Any statements, communications or notices to be provided pursuant to this Settlement Agreement shall be sent by certified mail to the attention of the Parties indicated